JOHN J. JORDAN, ESQ. (State Bar No. 175678)
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Tel:  (415) 391-4814
Fax: (415) 391-4308
jjordanesq@aol.com

Counsel for Defendant
ROGER ARTEAGA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR 22-0311-CRB |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| vs. | |
| ROGER ARTEAGA, | Date:   February 3, 2023 |
| Defendant. | Time:   9:00 A.M. |
| | HON.  CHARLES R. BREYER |

### I. INTRODUCTION

The defendant, ROGER ARTEAGA, through counsel of record, John J. Jordan, hereby files this sentencing memorandum, in support of the defendant's recommendation that the Court sentence the defendant to 24 months incarceration, three years supervised release, and a $100 special assessment.

The defendant is a 29 year old native of Honduras, who came to this country as a teenager to escape the abject poverty his family endured, and to flee from the criminal gangs who had already shot him once.  He watched in Honduras as his mother struggled to raise her family, lacking money to buy medicine as his two older sisters died, one from parasites that traveled to her brain and one from a severe respiratory illness.  PSR ¶ 75.  A later step-father was physically abusive to his mother and him, until the step-father left.  PSR ¶ 76.  The defendant developed a

drinking and drug problem at an early age, a problem that continued until his arrest here. PSR ¶¶ 48, 49, 56-60. His addiction played a major role in this drug trafficking offense, as he sold drugs to support his habit. While incarcerated, his nephew was murdered in Southern California.

In light of the numerous mitigating factors present here, the defense recommends a variant sentence of 24 months.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The PSR details the facts of the offense. PSR ¶¶ 6-38.

In summary, the defendant and his brother Luis Ochoa purchased fentanyl from sources in the Bay Area, repackaged it, and re-sold it. The quantities of the drug sold did grow over time, as the defendants found themselves falling deeper into the drug business.

The defendant was arrested on these charges on October 14, 2021, and has been in continuous federal custody since October 15, 2021.

On August 22, 2022, the defendant and his brother were charged in a one-count Information with Conspiracy to Distribute and Possess with Intent to distribute Fentanyl, in violation of 21 U.S.C. § 846,  21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On October 12, 2022, both Arteaga and Ochoa pled guilty to the sole count in the Information, pursuant to a written plea agreement. PSR ¶ 3.

Post-plea, the defendant completed a thorough safety valve proffer, disclosing sources of supply and other information.

## III.  GUIDELINES CALCULATION AND PROBATION'S RECOMMENDATION

The defendant's final offense level, after two pending adjustments, should be Offense Level 23. There is no mandatory minimum. See 21 U.S.C. § § 841(b)(1)(C).

The defendant agrees with U.S. Probation, consistent with the plea agreement with the government, that the Base Offense Level is 30, pursuant to U.S.S.G. §§2D1.1(a)(1), (c)(5); and there is a three-level reduction for Acceptance of Responsibility, pursuant to USSG §3E1.1. The government and the defendant agree that the Court should then grant a further two-level

1  reduction for a Global Disposition, pursuant to U.S.S.G. §5K2.0(a)(2)(B), based on both
2  defendants waiving grand jury indictment and pleading guilty immediately.  The defendant is
3  also eligible under current case law for the Safety Valve provision (18 U.S.C. 3553(f)), providing
4  for an additional 2 point reduction.  PSR ¶ 116 ("In this case, Mr. Arteaga satisfied all five
5  criteria for the expanded First Step Act Safety Valve provision.").

6  The PSR concludes in the Sentencing Recommendation "Should the Court grant the
7  contemplated two-level departure for Global Disposition and the two-level downward variance
8  for the defendant meeting the criteria of the expanded First Step Act safety valve, the resulting
9  Total Offense Level of 23 and Criminal History Category III would provide the guideline
10  imprisonment range of 57-71 months." PSR Sent. Rec., page 2.

11  The Probation Officer has recommended a downward variance to 48 months, based on
12  "the defendant's disadvantaged upbringing, his struggle with drug addiction, and his likely
13  deportation to Honduras." PSR Sent. Rec., page 3.

14  **IV. DEFENDANT'S ARGUMENT AND SENTENCING RECOMMENDATION**

15  **A.    Introduction**

16  The defendant asks this Court to sentence him to 24 month, followed by 3 years
17  supervised release, after considering the Probation Officer's request for a downward variance and
18  then taking into account further additional mitigating information set out below.

19  **B.    Applicable Law**

20  The Court is familiar that post-*Booker*, a district court is "not mandated to sentence
21  within an applicable Guideline range because the Sentencing Guidelines are advisory--not
22  mandatory." *United States v. Mix*, 450 F.3d 375 (9th Cir. 2006), citing *United States v. Cantrell*,
23  433 F.3d 1269, 1279-81 (9th Cir. 2006) and *United States v. Booker*, 543 U.S. 220, 259-60
24  (2005).  District courts must first consult the Sentencing Guidelines and take them into account
25  when sentencing.  *United States v. Cantrell*, 433 F.3d at 1279, quoting *Booker*, 543 U.S. at 264.
26  The district court then applies the factors enumerated in 18 U.S.C. § 3553(a) in its sentencing

decision. *United States v. Cantrell*, 433 F.3d at 1279-80; see also *United States v. Ameline*, 409 F.3d 1073, 1085-86 (9th Cir. 2005) (en banc).

The § 3553 factors include the nature and circumstances of the offense and the history and characteristics of the defendant; the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)-(2).

In addition, the Court should address the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

The Court has the responsibility to "impose a sentence sufficient, but not greater than necessary, to accomplish the goals of sentencing, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment; to afford adequate deterrence; and to protect the public from further crimes of the defendant." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted); see also 18 U.S.C. § 3553(a).

**C.    The Court, in its Discretion, Should Grant a Variance**

**1.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The defendant certainly acknowledges the seriousness of the underlying offense, which involved a substantial amount of fentanyl. However, to his credit, Mr. Arteaga agreed to waive his right to a Grand Jury indictment and pled guilty to an Information. He did so before filing any pre-trial motions, including a possible motion to suppress the wiretaps used here. He then

fully expressed his guilt to the Court at his plea, to the government during the safety valve proffer, and then to the Probation Officer.

Mr. Arteaga was also acting while severely addicted to methamphetamine. His drug addiction clouded his judgment when he decided to sell drugs to support his habit. Certainly, the defendant regrets what he found himself involved in, not fully realizing what a terrible mistake of judgment he was making.

Moreover, the history and characteristics of the defendant support the recommendation of a 24 month sentence. As the PSR sets out, his life history illustrates the challenges he has faced, facing poverty and the violence in Honduras. Mr. Arteaga never knew his father, and was raised in poverty by his mother, who worked selling clothing and funeral wreaths, and baking bread. PSR ¶ 75. One of five siblings, two of his sisters "died when they were young – one had respiratory issues and the other had parasites that traveled to her brain." PSR ¶ 75.

When Mr. Arteaga was approximately one year old, his mother met his stepfather, but he was "physically abusive toward his mother and whenever he tried to step in to protect her and to separate them, he would get hit with a belt. Mr. Arteaga reported he never had a solid, stable, father figure at home." PSR ¶ 76.

While Mr. Arteaga's mother worked long, labor-intensive hours, "it was not enough to support the family. Typically, Mr. Arteaga's family ate one meal per day. They could not afford to pay for electricity or water... His mother would choose food over utilities to survive." PSR ¶ 76. As he was the oldest sibling of the family, as "a result of having to care for his siblings, and because they could not afford to buy books or shoes and clothes, Mr. Arteaga stopped going to school – completing up to the eighth grade." PSR ¶ 76.

As the Court is no doubt aware, gang violence is rampant in Honduras. The defendant lost one of his cousins to gang violence after he was killed by gang members, and he himself was shot in the left side of his stomach. PSR ¶ 78.

Still a teenager, Mr. Arteaga decided to try to earn money in the United States to support

his family.  But, he was "kidnapped and extorted by the Zetas Mexican drug cartel while making his way to the United States. He was beat with pieces of wood and sticks and they demanded money. He was locked up with other people in a trailer with no water and he felt he could not breathe as there was insufficient air flow. Eventually, someone heard them banging the trailer and freed them. However, he saw some people faint and even die slowly."  PSR ¶ 78.

The defendant relocated to the United States at the approximate age of 16 or 17, in search of a better life and better living conditions.  He moved in search of legal work from state to state, living in Tennessee, South Carolina, Atlanta, Georgia, Utah, and the San Francisco Bay Area. He told counsel he tried to get work as a landscaper or other legal jobs, but his young age and lack of work papers made it very difficult for him to find legal work.

While struggling to find work, Mr. Arteaga began consuming alcohol to excess on a regular basis, and used marijuana, cocaine, crack cocaine, fentanyl, methamphetamine, Xanax pills, and Percocet pills.  He participated in two prior outpatient drug treatment programs in San Francisco, but he did not complete them due to incurring new arrests and relapsing.  PSR ¶ 86.

On the positive side, just prior to his arrest on these charges, Mr. Arteaga had formed a stable relationship with his girlfriend, Mariela Moncada, and her three children, for the past two years.  PSR ¶ 79.  He has also helped his mother financially anytime he could.  PSR ¶ 79. He has two minor children from two previous relationships, who he also helped to support.  PSR ¶ 81.

While the defendant was in custody in this case, his cousin Merlin Nohe Rodriquez Valle was murdered, in a homicide in Southern California.  PSR ¶ 41, See attached newspaper article. This murder has had a profound effect on the defendant and his brother, as they have been unable to grieve with their family members.

2. **The Need for the Sentence Imposed (A) to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; (B) to Afford Adequate Deterrence to Criminal Conduct; (C) to Protect the Public from Further Crimes of the Defendant**

While a sentence of 24 months is a substantial downward variance, there is support for it

in this case.

One, a sentence of 24 months is a substantial sentence, and not a slap on the wrist. The defendant has been in continuous federal custody since October 15, 2021, so he has credit for approximately 15 months. The defendant has never served a substantial prison sentence, having two prior local jail sentences of 60 and 90 days. PSR ¶¶ 55, 56. Moreover, the Judiciary Sentencing Information (JSIN) platform is not accurate here, because the calculations for the JSIN are for offense level 27, whereas here the final, adjusted offense level is 23.

Two, as the defendant agrees to immediate deportation to Honduras, to join his family and one of his children, there seems little need to continue his incarceration in this country past 24 months.

Three, because of the COVID-19 virus, the restrictions placed on prison visiting, programing, and other activities means that any time in jail now is "hard" time, where all inmates are subject to greater restrictions, reduced programing, and limited or no visitation. The defendant has been in Santa Rita Jail since October 15, 2021, where visiting and class programming have been severely restricted. While it is impossible to quantify how much more punitive prison time during the pandemic has been, one court has estimated that individuals incarcerated during the COVID-19 pandemic serve "essentially the equivalent of either time and a half or two times what would ordinarily be served." *United States v. Elias*, 18-CR-33 (NGG), 2022 WL 125721, at *2 (E.D.N.Y. Jan. 13, 2022). The defendant suggests that the Court can consider this additional impact of COVID-19 in determining the appropriate sentence.

Four, the defendant will be removed from the United States to his native Honduras following completion of his sentence in this case. His immigration status, or lack thereof, will disqualify him for any sentence reduction under RDAP and will also disqualify him from being released early to a residential re-entry center ("halfway house"). The defendant asks the Court to consider this circumstance when sentencing the defendant.

**CONCLUSION**

The defendant asks this Court to sentence him to 24 months incarceration, followed by three years supervised release, and a $100 special assessment.

DATED: January 27, 2023.              Respectfully submitted,


                                      */s/ John J. Jordan*
                                      JOHN J. JORDAN

Arteaga Sent. Mem.                                    8